UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
FIDEL SANCHEZ,

      Plaintiff,

   - against -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.
--------------------------------------------------------X

**MEMORANDUM & OPINION**

Case No. 14 CV 4939 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Fidel Sanchez brings this action, seeking review of the final decision by the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's claim for disability insurance benefits ("SSDI") under Title II of the Social Security Act ("the Act") and Supplemental Social Security Income ("SSI") under Title XVI of the Act. The Commissioner moves for judgment on the pleadings. Plaintiff opposes that motion and cross-moves, seeking reversal of the Commissioner's decision and an immediate award of benefits, or remand for further administrative proceedings.

For the reasons set forth below, the Court remands Plaintiff's claim to the Commissioner for further administrative proceedings consistent with this opinion.

## I. BACKGROUND

### A. Plaintiff's Personal History

Plaintiff was 46 years old at the time of his alleged onset date. (R. 20.) He has an eighth-grade education and is able to communicate in English. (R. 20, 36.) Before the alleged onset date, he worked as a plumber for 15 to 20 years. (R. 36.) He stopped working due to injuries he

sustained on the job, and has not engaged in any substantial gainful activity since December 11, 2009. (R. 15.)

At the hearing before the Administrative Law Judge ("ALJ"), Plaintiff testified that he wears a back brace, uses a cane, and also uses a motorized scooter. (R. 41, 45, 46.)

**B.  Onset Date**

Plaintiff sustained a job-related injury on December 11, 2009 after falling at a job site. (R. 36.)  At the direction of his employer, he did not immediately seek medical treatment. (R. 38.)

On December 21, 2009, Plaintiff went to the emergency room at Jamaica Hospital Medical Center ("Jamaica Hospital"), complaining of persistent lower back pain, numbness in his hands, tingling in his left leg, and radiating symptoms in his left leg. (R. 38, 297–98.)  He was diagnosed with lower back pain and a back contusion, and directed to conduct light work duty for one week. (R. 302.)

**C.  Treating Physicians**

1.  Dr. Bhambani

Plaintiff followed up with his primary care physician, Dr. Nina Bhambani, on March 1, 2010. (R. 339.)  He sought treatment for severe lumbar radiculopathy and radicular pain.[1] (R. 339.)  Dr. Bhambani diagnosed Plaintiff with neuralgia neuritis[2] and radiculitis unspecified;

---

[1]  Lumbar radiculopathy refers to a disease involving the nerves in the lumbar spine, and can manifest as pain, numbness, or weakness.  *See* http://www.emoryhealthcare.org/spine/medical-conditions/lumbar-radiculopathy.html (last visited 9/28/15).

[2]  Neuralgia is pain that follows the path of a nerve, due to irritation or damage to the nerve. *See* http://www.nytimes.com/health/guides/disease/neuralgia/overview.html (last visited 9/28/15).  Neuritis is a general term for inflammation of a nerve.  *See* https://en.wikipedia.org/wiki/Neuritis (last visited 9/28/15).

muscle spasm, diabetes mellitus, and other and unspecified hyperlipidemia.[3] (R. 340.) She prescribed pain medication to Plaintiff, ordered additional testing, and referred Plaintiff for a pain management/neurological evaluation. (R. 340.)

At a follow-up appointment with Dr. Bhambani on March 30, 2010, Plaintiff reported persistent back pain. Plaintiff continued to see Dr. Bhambani, with follow-up appointments on May 21, 2010, July 2, 2010, August 12, 2010, and September 20, 2010. (R. 347, 349, 351, 353.) Dr. Bhambani's records of these appointments show that Plaintiff continued to have severe radicular pain and that she refilled prescriptions for pain medication. (*Id*.)

On March 29, 2011, Dr. Bhambani issued a letter stating that she was treating Plaintiff for lumbar and cervical spine disc herniation (multiple with radiculopathy), osteoarthrosis (lumbar spine and multiple sites), and diabetic neuropathy. (R. 238.) She stated that Plaintiff's neck and back injury were chronic, irreversible, and progressive, and that he was currently disabled from employment. (*Id*.) She further stated that Plaintiff's disc herniations resisted treatment and could require invasive surgery, but that there was no guarantee of improvement given the significant nerve damage. (*Id*.)

    2.    Dr. James

On July 26, 2010, Plaintiff saw Dr. Harold James for an initial evaluation in connection with his workers' compensation claim. (R. 218.) Dr. James noted that Plaintiff had marked paracervical muscle spasms and tenderness in the neck, and that the range of motion in his neck was well below normal at all points of measurement. (R. 219.) Dr. James also noted that Plaintiff had marked paravertebral muscle spasms and tenderness in his back, all along his spine.

---

[3] Hyperlipidemia refers to a condition where the patient has a high level of fats in his blood. *See* http://www.heart.org/ HEARTORG/Conditions/Cholesterol/AboutCholesterol/Hyperlipidemia_UCM_434965_Article.jsp (last viewed 9/29/15).

(R. 219.) He noted that Plaintiff's range of motion in his back was also well below normal at all points of measurement. (R. 219.) Dr. James found Plaintiff's prognosis to be guarded and pronounced him to be partially disabled. (R. 29.)

In subsequent examinations on August 4, 2010, September 9, 2010, and February 22, 2011, Plaintiff's range of motion with respect to his neck and back had not improved and remained well below normal. (R. 224, 226, 228.) Dr. James advised Plaintiff to continue physical therapy 2-3 times a week. (R. 228.)

### 3. Dr. Zenetos

Plaintiff first saw Dr. Panagiotis Zenetos on September 20, 2011. (R. 185.) The Commissioner notes that Dr. Zenetos is an anesthesiologist who specializes in pain medicine. (Def. Memo at ECF 15.) Plaintiff reported pain in the lower back, both legs, the neck, and right hip. (R. 185.) Plaintiff also reported that he could not sit for more than 30 minutes and that he could not stand for more than 10 minutes. (R. 185.) Dr. Zenetos diagnosed Plaintiff as having cervical radiculopathy and lumbar radiculopathy. (R. 186.) He noted that Plaintiff's range of motion in his back and neck were both decreased. (R. 186.) He stated that Plaintiff's disability was total and that he could not work. (R. 186.)

Plaintiff had follow-up appointments with Dr. Zenetos on October 18, 2011, November 15, 2011, December 13, 2011, January 10, 2012, February 7, 2012, March 6, 2012, April 3, 2012, and May 1, 2012. (R. 188–206.) Records from these appointments are consistent with his first visit to Dr. Zenetos. (*Id.*)

On June 26, 2012, Dr. Zenetos prepared a functional capacity statement. (R. 369.) He stated that Plaintiff could not lift more than 3 pounds; could only stand or walk for a total of 2 hours (with only 1-1.5 hours without interruption); could only sit for a total of 2 hours (with only

4

a half-hour to 1 hour without interruption); and noted that Plaintiff could not climb, balance, stoop, crouch, kneel or crawl. (R. 369–70.) Dr. Zenetos further noted that Plaintiff used assistive devices to walk. (R. 370.)

**D.     Consulting Physicians**

1.     Dr. Haussman

Plaintiff saw Dr. Steven Haussman on November 20, 2010 in connection with his workers' compensation claim. (R. 330.) Plaintiff complained of numbness in the arms and hands, pain in the lower back, pain down the legs, limping, and difficulty holding his weight. (R. 330.) Plaintiff could walk, but only with the assistance of a cane. (R. 331.) Dr. Haussman observed that Plaintiff "had trouble ambulating across the room and getting up on the [exam] table but [] was able to ascend the table and get into the exam gown." (R. 331–32.) Dr. Haussman found that Plaintiff's cervical spine showed 30 degrees right and left rotation, and 20 degrees flexion with 20 degrees extension. (R. 332.) He further noted that Plaintiff's lumbar spine showed flexion of 45 degrees while supported and extension of 20 degrees. (R. 332.) Plaintiff was "20 degrees short of full extension and [] had minimal rotation due to subjective complaints." (R. 332.)

Dr. Haussman diagnosed Plaintiff with cervical and lumbrosacral strain and contusion, and lumbar disc herniation. (R. 332.) He opined that Plaintiff had a "marked partial disability" and was "disabled from his normal occupation", since Plaintiff was unlikely to return to work as a plumber. (R. 332.) He found, however, that Plaintiff could perform sedentary work with no lifting in excess of 10 pounds. (R. 332.)

2.     Dr. Szerlip

5

On March 9, 2011, Plaintiff saw Dr. Gregg M. Szerlip, D.O., a board-certified doctor in anesthesiology and pain management. (R. 232.) Plaintiff complained of lower back pain, with a spasm on the right side, causing him to limp. (R. 232.) Plaintiff also complained of bilateral hand numbness and tingling. (R. 232.) Dr. Szerlip noted that Plaintiff's "most remarkable physical condition" was that of morbid obesity and that he smoked. (R. 232.) Dr. Szerlip observed that Plaintiff walked with a cane and was able to get on the examination table unassisted. (R. 233.)

During the physical examination, Dr. Szerlip listed his impressions as lumbar disc displacement, lumbar paraspinal muscle spasms, and bilateral upper and lower extremity numbness and tingling." (R. 233.) Dr. Szerlip advised Plaintiff that because his symptoms "[were] completely out of proportion with the MRI findings," Plaintiff needed further evaluation, possibly surgically. (R. 233.) Dr. Szerlip further stated that he did not think he could help Plaintiff with epidural steroid injections because of Plaintiff's diabetes, obesity, and smoking. (R. 233.)

       3.    <u>Dr. Alvarez</u>

On May 4, 2011, Plaintiff saw Dr. Eduardo Alvarez, an orthopedic surgeon, for an independent medical examination in connection with his workers' compensation claim. (R. 240.) Dr. Alvarez reviewed Plaintiff's medical records from Jamaica Hospital, records from Dr. Bhambani, and records from Plaintiff's July 26, 2010 evaluation by Chris Cueto, a chiropractor. (R. 241.) During examination, Dr. Alvarez noted that Plaintiff walked with a cane, had "markedly restricted" range of motion, in all planes, in his neck and spine, and limited straight leg raising. (R. 243.)

Dr. Alvarez also noted that Plaintiff "presented an exaggerated response to the foraminal compression test"[4]. He diagnosed Plaintiff as having chronic neck pain, chronic low back pain with herniated disc and bilateral lower extremity radicular symptoms. (R. 243.) In making this diagnosis, Dr. Alvarez noted "[t]here is some degree of symptom magnification and exaggerated responses noted following this examination." (R. 243.) Finally, Dr. Alvarez opined that Plaintiff manifested a temporary marked ongoing orthopedic disability. (R. 243.) He stated that Plaintiff "is able to return to work in an office setting/indoor[,] sedentary[,] exerting 10 pounds of force[,] occasionally in holding, lifting, pushing, and pulling and with inability to perform any repetitive and sustained bending, lifting, and twisting motions of the lower back." (R. 243–44.)

For treatment, Dr. Alvarez advised that no further physical therapy was indicated, and that a series of lumbar epidural steroid injections was medically necessary, pending medical clearance, due to Plaintiff's diabetes. (R. 244.)

### 4. Dr. Chow

On July 13, 2011, Plaintiff saw Dr. Irene Chow, D.O., for an examination at the Commissioner's direction. (R. 290.) At the exam, Dr. Chow observed that Plaintiff was using a cane and that "[t]he cane is seen as medically necessary." (R. 292.) Plaintiff needed assistance to get on and off the exam table. (R. 292.) She noted that Plaintiff's range of motion in the neck and back was limited to a "minimal range of motion." (R. 293.) Upon examination with a neurological examination tip, Plaintiff stated he could not feel the implement. (R. 293–94.) Dr. Chow opined that Plaintiff "may have been exaggerating his symptoms when he was tested for sensation with the Neurotip." (R. 294.)

---

[4] The foraminal compression test is used to assess nerve root pain. *See* https://en.wikipedia.org/wiki/Spurling%27s_test (last visited 9/29/15).

7

Dr. Chow opined that Plaintiff had "mild restriction" to prolonged walking, bending, heavy lifting, and carrying. (R. 294.)

### E. Other Medical Sources

On July 26, 2010, Plaintiff saw chiropractor Chris Cueto in connection with his workers' compensation claim. (R. 16.) On examination, Cueto found a reduced range of motion of the cervical, thoracic and lumbar spines, as well as positive straight-leg-raising at 15 degrees. (R. 269–70.) Cueto recommended a neurological consult, an orthopedic consult, an MRI of the cervical, thoracic and lumbar spine, a physical therapy evaluation, chiropractic treatment, and imaging of Plaintiff's right hip. (R. 271.)

### F. Procedural History

Plaintiff filed an application for SSI on March 31, 2011. He also filed an application for disability insurance benefits on May 28, 2011. Both applications alleged an onset date of December 11, 2009. (R. 13.)

The SSA initially denied both applications on July 28, 2011. (R. 13.) Plaintiff then requested a hearing, which was held on December 17, 2012 by video. Sanchez appeared in Brooklyn, New York, and ALJ Mark Hecht presided over the hearing from New York, NY. (R. 13.) On December 18, 2012, the ALJ rendered his decision, finding Plaintiff was not disabled. Though Plaintiff requested review by the Appeals Council, the Appeals Council denied Plaintiff's request on July 21, 2014. Plaintiff filed this action on August 20, 2014.

## II. STANDARD OF REVIEW

### A. District Court Review of the Commissioner's Decision

"It is not the function of the reviewing court to try the case *de novo* but . . . to decide whether the Secretary's decision is supported by substantial evidence." *Mongeur v. Heckler*, 722

F.2d 1033, 1038 (2d Cir. 1983). Therefore, the Court's duty is to determine whether the Commissioner's decision is based upon correct legal standards and principles and whether it is supported by substantial evidence in the record, taken as a whole. *See Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). "'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (alterations and internal quotation marks omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id*. (citing *Mongeur*, 722 F.2d at 1038). However, the Court is mindful that "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's determination, the Commissioner's decision is conclusive and must be upheld. *Selian*, 708 F.3d at 417.

    **B.**    **Eligibility Standard for Social Security Disability Benefits**

The Social Security Act ("the Act") provides that an individual is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) (SSDI), 1382c(a)(3) (SSI). To qualify for Social Security disability benefits, the claimed disability must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3),

1382c(a)(3)(D); *accord Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013); *Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir. 1999).

The Act's regulations prescribe a five-step process for the evaluation of disability claims. First, the Commissioner determines whether the claimant currently is engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i) (SSDI), 416.920(a)(3)(i) (SSI).

If the claimant is not currently engaged in "substantial gainful activity," the Commissioner proceeds to the second step, which is whether the claimant suffers from a medical impairment, or combination of impairments, that is "severe," meaning that the impairment "significantly limits [claimant's] physical or mental ability to do basic work activities." If the impairment is not severe, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the impairment is severe, the Commissioner proceeds to the third step, which is whether the impairment meets or equals one of the impairments listed in Appendix 1 to Subpart P of Part 404 of the Act's regulations (the "Listings"). If so, the claimant is presumed disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the impairment does not meet or equal a listing in Appendix 1, the Commissioner proceeds to the fourth step, which is whether, despite the claimant's severe impairment, he has the "residual functional capacity" ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's RFC is used to assess whether he or she can perform one of the five categories of work recognized by Social Security Administration ("SSA") regulations: very heavy, heavy, medium, light and sedentary. 20 C.F.R. §§ 404.1567, 416.967. Sedentary is the least rigorous of the five categories. *Schaal v. Apfel*, 134 F.3d 496,

501 n.6 (2d Cir. 1998) (citing 20 C.F.R. § 404.1567). In determining a claimant's RFC, the Commissioner considers all medically determinable impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a), 416.945(a). If the claimant's RFC is such that s/he can still perform past work, the claimant is not disabled.

If the claimant cannot perform past work, the Commissioner proceeds to the fifth and final inquiry, which is whether, in light of the claimant's RFC, age, education, and work experience, the claimant has the capacity to perform other substantial gainful work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant has such capacity, the claimant is not disabled. If not, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the burden of proving his/her case at steps one through four; at step five, the burden shifts to the Commissioner to establish that there is substantial gainful work in the national economy that the claimant could perform. *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004).

## III. DISCUSSION

### A. The ALJ's Decision

Applying the five-step framework, the ALJ ultimately found that Plaintiff was not disabled. At Step Two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar disc disease, diabetes mellitus, and well-controlled asthma. (R. 15.) At Step Three, the ALJ found that these impairments did not, however, meet or medically equal the severity of an impairment in the Listings. (R.15.) The ALJ then determined Plaintiff's RFC allowed him to perform the full range of sedentary work. The ALJ's RFC determination was principally based on the opinions of Dr. Alvarez and Dr. Chow. (R. 16, 17–18.) Finally, after

accounting for Plaintiff's limited education, age, work experience and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff could perform. (R. 20.) The ALJ therefore found Plaintiff was not disabled. (R. 21.)

The Commissioner argues that the ALJ's decision was based on substantial evidence and therefore should be upheld. (Def. Memo at ECF 23–29.)[5] Plaintiff, however, argues that the ALJ failed to follow the treating physician rule in rendering his decision and failed to properly evaluate Plaintiff's credibility. (Pl. Opp. at ECF 17–29.) The Court finds that the ALJ failed to properly apply the treating physician rule and that the ALJ's determination of Plaintiff's credibility was not supported by substantial evidence, therefore requiring remand for further administrative proceedings.

**B.     Treating Physician Rule**

1.     <u>The ALJ Failed To Follow The Treating Physician Rule</u>

The treating physician rule "generally requires deference to the medical opinion of a claimant's treating physician[.]" *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see* 20 C.F.R. § 404.1527(c)(1) ("Generally, [the Commissioner] give[s] more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); 20 C.F.R. § 416.927(c)(1) (same). According to the SSA regulations, the Commissioner will give "controlling weight" to "a treating source's opinion on the issue(s) of the nature and severity of . . . impairment(s) [so long as the opinion] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

---

[5]     Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran*, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2), *now codified at* 20 C.F.R. § 404.1527(c)(2)). These factors include: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the level of relevant evidence to support the opinion, the consistency of the opinion with the record as a whole, whether the source is a specialist in the area at issue, and other factors a claimant may bring to the Commissioner's attention. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). After considering the factors, the ALJ must "'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek v. Colvin*, --- F.3d ---, 2015 WL 5515261, at *3 (2d Cir. Sept. 21, 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. *Id*. (citing *Burgess*, 537 F.3d at 129–30.) The ALJ may not substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. (citing *Burgess*, 537 F.3d at 131.) While a treating physician's opinion that a claimant is disabled or unable to work is not automatically controlling, the ALJ is not exempt from explaining why the treating physician's opinion is not being credited. *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)

Here, the ALJ considered the opinions of all three of Plainitff's treating physicians, but declined to give controlling weight to any of them. In fact, the opinion is devoid of any references to the weight given to Plaintiff's providers. Nor did the ALJ "provide good reasons" for failing to credit the treating physician's opinions. The Court discusses the ALJ's treatment of each of Plaintiff's treating physicians below.

13

*Dr. Bhambani*. The ALJ noted that Dr. Bhambani had treated Plaintiff "since March 2010" for multiple lumbar and cervical disc herniations with radiculopathy. (R. 17.) The ALJ stated that Dr. Bhambani deemed Plaintiff's neck and back injury chronic, irreversible and progressive, with no guarantee of improvement due to significant nerve damage. (R. 17.)

Though it was not error for the ALJ to disregard Dr. Bhambani's opinion that Plaintiff was disabled, the ALJ should have explained why her opinion was not credited. *See Snell*, 177 F.3d at 134. The decision is devoid of any such discussion. The Court therefore finds error in the ALJ's failure to explain why Dr. Bhambani's opinion was not given controlling weight.

*Dr. James*. The ALJ's discussion of Dr. James is brief. The ALJ notes that Dr. James advised conservative treatment, and devotes more discussion to Plaintiff's treatment by chiropractor Chris Cueto, who, like Dr. James, treated Plaintiff in connection with Plaintiff's workers' compensation claim. (R. 16.) The opinion does not mention Dr. James' finding that Plaintiff was partially disabled, or that Plaintiff saw Dr. James on four occasions between July 2010 and February 2011. Nor does it explain why Dr. James's opinion was not credited. The Court also finds error in the ALJ's treatment of Dr. James's opinion.

*Dr. Zenetos*. Though the ALJ considered Dr. Zenetos's functional assessment of Plaintiff, his decision fails to explain why it was not given controlling weight. Dr. Zenetos saw Plaintiff nine times between September 2011 and May 2012, and then issued his functional capacity assessment on June 26, 2012. Dr. Zenetos noted that Plaintiff could only stand or walk for up to 2 hours a day, could only sit for up to 2 hours a day, and could only lift up to 3 pounds occasionally. (R. 19.) Dr. Zenetos's assessment is therefore inconsistent with the ALJ's ultimate conclusion that Plaintiff could perform sedentary work. *See* 20 C.F.R. § 404.1567(a) (stating that sedentary work requires the capacity to lift up to ten pounds, sit for approximately six hours

a day and stand or walk for approximately two hours a day. The ALJ should therefore have explained why he declined to credit Dr. Zenetos's assessment in determining Plaintiff's RFC.

The Court further notes that while an ALJ may decline to give a treating physician's opinion controlling weight, where the opinion is not consistent with other substantial evidence in the opinion, the opinions of Plaintiff's treating physicians were largely consistent: all three noted Plaintiff's severe and persistent back and neck pain, and both Dr. Bhambani and Dr. Zenetos opined that Plaintiff's disability was total. In addition, Dr. James, Dr. Chow, and Dr. Alvarez were all in agreement that Plaintiff had a limited range of motion in his back and neck, and multiple doctors noted Plaintiff relied on assistive devices to move around. Rather than balancing and weighing this evidence, however, the ALJ gave undue weight to Plaintiff's consulting physicians, rather than his treating physicians. While the opinion devotes one paragraph to Dr. Bhambani, one line to Dr. James, and two paragraphs to Dr. Zenetos, it devotes nearly two full pages to the opinions of Dr. Alvarez, Dr. Haussman, and Dr. Chow, each of whom examined Plaintiff only once. (*See* R. 4–7.) The ALJ effectively adopted the findings of Dr. Alvarez and Dr. Haussman with respect to Plaintiff's functional capacity, without explaining why Dr. Zenetos, a treating physician, was not credited in his finding that Plaintiff's functional capacity was less than sedentary.

Accordingly, the Court finds that the ALJ erred by failing to properly apply the treating physician rule and giving undue weight to the consulting physicians.

2.  Whether the ALJ Erred in Failing To Seek Additional Evidence

Plaintiff further argues that the ALJ should have sought additional evidence from Dr. Zenetos, Dr. James, or Dr. Bhambani, and also should have arranged for an independent orthopedic medical advisor to be present at Plaintiff's hearing. (Pl. Opp. at ECF 22–24.) While

15

an ALJ has a duty to "affirmatively develop the administrative record," *Burgess*, 537 F.3d at 129, the ALJ has no obligation to do so where there are no clear gaps in the record and where the ALJ already possesses a complete medical history. *Rosa v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999). Here, Plaintiff does not point to any gaps in the medical record or claim that his complete medical history was not before the ALJ. Thus, the Court finds that it was not error for the ALJ to decline to seek additional evidence. *See Beach v. Comm'r of Soc. Sec.*, No. 13 Civ. 323, 2014 WL 859167, at *2 (N.D.N.Y. Mar. 5, 2014) ("[I]f all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence.").

### C. Credibility Determination

Plaintiff contends that the ALJ erroneously evaluated Plaintiff's credibility. The Court agrees.

The SSA regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). First, the ALJ must decide whether the claimant suffers from "a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b). If the claimant does suffer from such an impairment, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The ALJ considers statements by the claimant or other sources regarding his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources or to the agency in the course of administrative proceedings. *Genier*, 606 F.3d at 49; *see also* S.S.R. 96–7p, 1996 WL 374186 (Soc. Sec. Admin. Jul. 2, 1996).

16

Where the ALJ finds that the claimant's testimony is inconsistent with the objective medical evidence on the record, the ALJ must evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)–(vii). "If the ALJ rejects plaintiff's testimony after considering the objective medial evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Fernandez v. Astrue*, No. 11 CV 3896, 2013 WL 1291284 at *18 (E.D.N.Y. Mar. 28, 2013) (citing *Correale-Englehart*, 687 F. Supp. 2d at 435).

Here, the ALJ determined that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms", but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible[.]" (R. 19.) The ALJ determined that Plaintiff's complaints were not corroborated by the record by pointing to comments by Dr. Chow and Dr. Alvarez that Plaintiff had exaggerated his symptoms. (R. 20.) The ALJ also pointed to Dr. Szerlip's statement that Plaintiff's symptoms were completely out of proportion with the MRI findings. (R. 21.) However, the ALJ failed to explain why Plaintiff's reports of his pain and limited mobility to his treating physicians were not credible, let alone discuss any factors set forth in the regulations.

17

By adopting the credibility determination of Plaintiff's consulting physicians and disregarding the rest of the record, as well as Plaintiff's testimony before the ALJ, the ALJ's determination on Plaintiff's credibility was not supported by substantial evidence. The ALJ failed to evaluate Plaintiff's credibility according to the factors prescribed by the regulations.[6] This error alone requires remand. *See Grosse v. Comm'r of Soc. Sec.,* No. 08 CV 4137, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding that the ALJ committed legal error in wholly failing to consider factors (ii) to (vii)). Furthermore, the ALJ erred by failing to consider Plaintiff's long work history in making his credibility determination. *See Schaal*, 134 F.3d at 502 (noting "a good work history may be deemed probative of credibility"). On remand, the ALJ should determine the Plaintiff's credibility according to the factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii) and take into account Plaintiff's 15–20 year work history.

### D. Remand For Further Proceedings

Though the Court finds that the ALJ committed errors requiring remand of Plaintiff's claim, the Court finds that remand solely for the calculation and award of benefits is not appropriate on the current record. Reversal and remand for the calculation of benefits is appropriate where the record provides "persuasive proof of disability and remand for further evidentiary proceedings would serve no purpose." *See Bradley v. Colvin*, --- F.3d ---, 2015 WL 2412379, at *15 (E.D.N.Y. May 20, 2015) (citing *Fernandez*, 2013 1291284, at *20 (further

---

[6] Nor does the Court find Dr. Szerlip's statement as damning as the ALJ did. Dr. Szerlip advised Plaintiff that because his symptoms "[were] completely out of proportion with the MRI findings," Plaintiff needed further evaluation, possibly surgically. (R. 233.) The ALJ, however, omitted Dr. Szerlip's statement that Plaintiff needed further evaluation, stating only that a "Worker's Compensation pain management specialist concluded that the claimant's symptoms are completely out of proportion with the MRI findings." (R. 20.)

citations omitted)). Here, however, there is conflicting evidence in the record regarding the extent of Plaintiff's injuries and limitations, and the ALJ did not call a vocational expert to testify. Therefore, "it cannot be said that the evidence of record so clearly points to a physically disabling condition as to justify a remand solely for the calculation of benefits." *Longbardi v. Astrue*, No. 07 CIV. 5952, 2009 WL 50140, at *38 (S.D.N.Y. Jan. 7, 2009) (remanding for ALJ to re-weigh the evidence from treating sources).

The Court, however, is mindful of the "often painfully slow process by which disability determinations are made" and that a remand for further proceedings could result in substantial delay. *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (citations and quotations omitted). The Court therefore directs that further proceedings before an ALJ be completed within 60 days of the date of this Order, and that if the ALJ again determines that Plaintiff is not entitled to benefits, a final decision of the Commissioner should be rendered within 60 days of Plaintiff's appeal from the ALJ's decision. If these deadlines are not observed, the Commissioner must award benefits to Plaintiff immediately. *See id.* (directing the district court to impose a time limit on subsequent proceedings); *Catsigiannis v. Astrue*, No. 08 CV 2177, 2013 WL 2445046, at *5 (E.D.N.Y. June 4, 2013) (directing expedited consideration of plaintiff's claim by the ALJ and the Commissioner).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied and Plaintiff's cross-motion is granted. Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for further administrative proceedings consistent with this opinion. The ALJ is directed to complete any further proceedings within 60 days of the date of this Order, and if the ALJ again determines that Plaintiff is not entitled to benefits, a final decision of the Commissioner should be rendered within 60 days of Plaintiff's

appeal from the ALJ's decision. If these deadlines are not observed, the Commissioner must award benefits to Plaintiff immediately.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2015
　　　　Brooklyn, New York